**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| POLYCEL STRUCTURAL FOAM, INC.,: | : | Bankruptcy No. 00-62780 (RTL) |
| Appellant, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 04-4029 (MLC) |
| | : | |
| POOL BUILDERS SUPPLY OF THE | : | |
| CAROLINAS, INC., | : | **MEMORANDUM OPINION** |
| | : | |
| Appellee. | : | |

**COOPER, District Judge**

This matter comes before the Court on the appeal by Polycel Structural Foam, Inc. ("Polycel") from the Bankruptcy Court's June 22, 2004 order clarifying its December 3, 2001 order and transferring possession of industrial foam molds ("the molds") from Polycel to Pool Builders Supply of the Carolinas, Inc. ("Pool Builders"). The Court, for the reasons stated herein, will reverse the Bankruptcy Court's June 22, 2004 order and remand for findings of fact and conclusions of law consistent with this memorandum opinion.

**BACKGROUND**

**I. Facts**

A. Uncontested Facts

A group of creditors of Polycel Liquidation, Inc., formerly known as Polycel Structural Foam, Inc., ("the Debtor"), petitioned for bankruptcy in a Kentucky bankruptcy court on November 7, 2000. (Polycel Br. at 3.) That bankruptcy

proceeding was transferred to United States Bankruptcy Court for the District of New Jersey ("the bankruptcy court") and converted into a voluntary Chapter 11 reorganization on December 18, 2000. (Id.) The Debtor was involved in the business of manufacturing foam molds. (Id.)

KJNCO, Inc. ("KJNCO") committed to buy the Debtor's business. (Id.) The Debtor, accordingly, filed a motion before the Bankruptcy Court (the "Sale Motion"), on September 10, 2001, seeking: "(1) authorization to sell a substantial portion of its assets pursuant to 11 U.S.C. §§ 363(b) and 365; (2) approval of the form, manner[,] and content of the proposed notice of sale; and (3) approval of an 'expense reimbursement' and bidding procedures." (App. Polycel Br., Vol. 1, Item 1, Mot. Sell Assets, at 1.) The Bankruptcy Court granted the Sale Motion on September 25, 2001. (Id., Item 5, Ord. Authorizing Sale.)

KJNCO and the Debtor subsequently entered into an asset purchase agreement ("Purchase Agreement"). (Polycel Br. at 4.) KJNCO then acquired and assumed the name Polycel Structural Foam, Inc.[1] (Id.) Polycel, under the terms of the Purchase Agreement, agreed to purchase the Debtor's business property as follows:

---

[1] Although KJNCO assumed the corporate and trade names of the Debtor upon purchase of the Debtor's business, Polycel Structural Foam, Inc., formerly known as KJNCO, Inc., is a separate and distinct entity from Polycel Liquidation, Inc., formerly known as Polycel Structural Foam, Inc. (Polycel Br. at 4 n.2; Pool Builders Br. at 7 n.1.)

2

    1.1   <u>Acquired Assets</u>.  Upon the terms, and subject to
the conditions of this Agreement, on the Closing
Date (as defined below) the Sellers shall sell,
assign, transfer, convey and deliver to Purchaser,
and Purchaser shall purchase from Sellers, all of
the right, title and interest of Sellers in and of
certain tangible and intangible assets and rights
used in connection with the ownership and
operation of the Business (such assets, properties
and rights being referred to herein as the
'Acquired Assets').  All of the Acquired Assets,
including those related to the Bankruptcy Case
shall be sold, assigned, transferred, conveyed and
delivered to Purchaser free and clear of all
claims, encumbrances, security interests,
mortgages, pledges, restrictions, charges and
liens of any kind (collectively, the 'Liens'), and
shall include, without limitation, the following
assets, properties and rights:

. . .

    (d) <u>Additional Property</u>.  Additional property
('the Additional Property') consisting of the
following: . . . (iii) all molds, nozzles and related
tools, including those set forth on <u>Schedule
1.1(d)(iii)</u> [; and]

. . .

    (k) <u>Molds</u>.  All molds, current and historical,
located in any of the Kentucky Premises, Ohio Premises
and New Jersey Premises subject to the rights of third
party persons who can prove an unencumbered ownership
interest in same, including, without limitation,
Backyard Products.  Such third party persons and the
molds to which they might claim an ownership interest
in are listed on <u>Schedule 1.1(k)</u>.

(App. Polycel Br., Vol. III, Item 29, Kurt Joerger Aff., Ex. B,

Purchase Ag., at 511-14.)  Schedule 1.1(d)(iii) specifically

references molds used to make pool panels.  (Polycel Br. at 5.)

Schedule 1.1(k), entitled "List of Molds encumbered by third

parties and a list of such third parties", states "None."  (App.

Polycel Br., Vol. III, Item 29, Kurt Joerger Aff., Ex. B,

Purchase Ag., at 547.)  Paragraph 4.7 of the Purchase Agreement

states: "Sellers have good and marketable title to all of the Business' personal property .  . . Upon consummation of the transaction contemplated by this Agreement, Purchaser shall acquire title to all of the Acquired Assets free and clear of all such liens, claims and encumbrances whatsoever."  (Id. at 519.)

The bankruptcy court, on November 14, 2001, issued an order "fixing the form, manner and content of notice of sale of Debtor's assets . . . confirming the bidding procedures and expense reimbursement" and set a hearing date of November 27, 2001.  (App. Polycel Br., Vol. I, Item 10, 11-14-01 Ord.)  The bankruptcy court solicited bid offers in open court for the Debtor's assets at the November 27, 2001 hearing.  (Id., Vol. II, Item 22, Sale Ord., at 224.)  KJNCO was awarded the bid.  (Id.) The sale of a substantial portion of the Debtor's assets to KJNCO was memorialized in a December 3, 2001 Bankruptcy Court order ("Sale Order").

The Bankruptcy Court issued the Sale Order, pursuant to 11 U.S.C. ("the Bankruptcy Code") §§ 363 and 365, "authorizing the sale of a substantial portion of the Debtor's assets" to KJNCO pursuant to the terms of the Purchase Agreement.  (App. Polycel Br., Item 22, Sale Ord.)  The Sale Order stated in pertinent part:

> M.   KJNCO is a purchaser and an assignee of the
>      Acquired Assets, as fully described in the
>      [Purchase] Agreement, pursuant to §§ 363 and 365
>      of the Bankruptcy Code, in good faith, and KJNCO
>      is entitled to the protections set forth in §
>      363(m) of the Bankruptcy Code.  In the event KJNCO
>      consummates the transactions contemplated by the

    [Purchase] Agreement, then, absent a stay, the
    reversal or modification on appeal of this Order
    or any other order authorizing the sale and
    assignment contemplated by this Order shall not
    affect the validity of the sale and assignment, to
    KJNCO of the interests and property be so sold and
    transferred.

N.    Proper, timely, adequate and sufficient notice of
    the Motion, the Sale Hearing, the Notice Order and
    Notice of Sale have been provided, and no other or
    further notice thereof or of the entry of this
    Order is necessary or required. . . .

O.3.  The sale and assignments herein shall be free and
    clear of all liens, claims, interests,
    encumbrances and other charges, (collectively, the
    "Liens"), pursuant to §§ 363(b) and (f) of the
    Bankruptcy Code . . .

O.9.  KJNCO is a good faith purchaser and is entitled to
    the protections set forth in §363(m) of the
    Bankruptcy Code. . . .

O.11.The sale and assignment pursuant to the Approved
    [Purchase] Agreement is not a fraudulent transfer
    within the meaning of the Bankruptcy Code and any
    other applicable state or federal law and cannot
    be avoided or set aside under any applicable law.

(Id. at 226-29.)

Pool Builders operates a swimming pool business, selling "swimming pool supplies and related goods." (Pool Builders Br. at 14.)  The Debtor and Polycel manufactured pool panels for Pool Builders, at the direction of Pool Builders, using the molds located on Polycel's premises. (Id. at 15.)  Pool Builders began negotiating the price it would pay Polycel for pool panels in 2004. (Id. at 11; Polycel Br. at 8.)  The parties, however, could not agree on the price of the pool panels. (Id.)  Pool

Builders then asked Polycel to return the molds, contending that it was the rightful owner of the molds.  (Id.)

Polycel filed an action with the Court, on February 27, 2004, seeking a declaration that it was the rightful owner of the molds by virtue of the Bankruptcy Court's Sale Order.[2]  (App. Polycel Br., Vol. II, Item 25, 2-27-04 Compl.)  Pool Builders filed an answer and counterclaim, on March 17, 2004, alleging conversion, unfair and deceptive trade practices, consumer fraud, unfair competition, and tortious interference with contract. (Id., Item 26, Ans. & Ctrclm.)  Pool Builders, that same day, also moved for immediate return of the molds and a temporary restraining order preventing Polycel from damaging the molds. (Id., Vol. III., Item 27, Motion Papers & Proposed Ord., at 435-37.)  Pool Builders asserted that it rightfully owned the molds and, therefore, the molds were not subject to the bankruptcy estate.  Pool Builders, thus, contended that the Bankruptcy Court lacked jurisdiction to transfer title to the molds to Polycel. (Id. at 421-23.)

We denied Pool Builders' motion on March 23, 2004, finding that Pool Builders had failed to sufficiently establish a likelihood of success on the merits of its claim or irreparable harm.  (Id., Vol. IV, Item 31, 3-23-04 Ord. Denying Inj.; Id., Item 30, 3-22-04 Oral Arg. Tr., at 621-23.)  The Court, in the

---

[2]  This action was filed under civil action number 04-905 (MLC).

course of oral argument discussion, observed that the issue before us centered on whether the Bankruptcy Court could reopen its Sale Order. (<u>Id.</u> at 625.) We, therefore, urged the parties to bring this issue and the attendant issue of ownership of the molds before the Bankruptcy Court because we were without factual basis to rule on such issues. (<u>Id.</u>) We, accordingly, administratively stayed Polycel's action against Pool Builders pending the Bankruptcy Court's determination as to the interpretation of its Sale Order.[3] (<u>Id.,</u> Item 31, 3-23-04 Stay Ord.)

Pool Builders moved in Bankruptcy Court, on April 28, 2004, "to clarify or modify or in the alternative to vacate, to the limited extent that [Pool Builders'] ownership rights are affected," the Bankruptcy Court's Sale Order ("Clarification Motion"). (App. Polycel Br., Vol. IV, Item 32, Clarification Mot., at 635-36.) Pool Builders' Clarification Motion was made pursuant to Federal Rules of Civil Procedure 59 and 60 and Federal Rules of Bankruptcy Procedure ("Bankruptcy Procedure")

---

[3] Pool Builders filed a motion to lift the administrative stay, on January 19, 2005, arguing that the action should be reopened so that it can prosecute its damage claims against Polycel. (Pool Builders Mot. Lift Stay Br. at 4.) Polycel opposes the motion and cross-moves for a dismissal of Pool Builders state law claims or, in the alternative, a consolidation of the administratively stayed matter, Civil Action No. 04-905, with the pending appeal, Civil Action No. 04-4029. (Polycel Opp. Br. at 1.) We will consider these motions in a separate order.

9023 and 9024.[4]  (Id.)  The Bankruptcy Court granted the motion
and ordered the transfer of immediate possession of the molds
from Polycel to Pool Builders upon Pool Builders' posting of a
bond on June 22, 2004  ("Clarification Order").  (Id., Vol. VI,
Item 40, Clarification Ord., at 1276.)  Polycel now appeals the
Clarification Order.

B.   Contested Facts

1.   Pool Builders' factual assertions

     Pool Builders contends that "[e]ach spring from 1991 through
2003, [it] placed an order with Debtor for the manufacture of
pool panels from the [m]olds."  (Pool Builders Br. at 15.)  Pool
Builders also asserts that it is now, and was at the time the
Bankruptcy Court issued the Sale Order, the proper owner of the
molds.  (Id. at 14-20.)  Pool Builders maintains that it was not
until the parties disagreed on the price of pool panels in
January 2004 that it first discovered that: (1) "there was any
dispute regarding the [m]olds' ownership" and (2) Polycel
claimed to have bought the molds from Debtor.  (Id. at 20.)
Pool Builders, in support of its claim of ownership, asserts
that the molds were not listed as part of the assets sold in
a 1997 sale of Debtor to a new owner and that the new owner
understood that Debtor did not own the molds.  (Id. at 15-

_____

     [4]  Federal Rules of Civil Procedure 59 and 60 are made
applicable to bankruptcy cases by Bankruptcy Procedure Rules 9023
and 9024 respectively.

16.)  Pool Builders also claims that Charles Koczan, Vice President of Polycel, "admitted that the [m]olds belonged to Pool Builders" in a January 12, 2001 letter.  (Id. at 19; App. Polycel Br., Vol. IV, Item 32, Madison M. Morgan Aff., Ex. A, 1-12-01 Koczan Letter, at 749.)

Pool Builders further contends that it "was totally unaware, for several years, of Debtor's 2000 bankruptcy . . . . [It] did not receive written or oral notice of the" bankruptcy or the sale of the molds nor was it served with a copy of the Sale Order.  (Pool Builders Br. at 16-18.)  "In short, and due to its lack of requisite notice (or any other form of due process) of the [sale of the molds], Pool Builders never had any idea that [Polycel] was apparently seeking to purchase its [m]olds."  (Id. at 18-19.)  Pool Builders claims that it "only learn[ed] of the purported sale of its molds in 2004" when the parties disagreed about the purchase price of pool panels.  (Id. at 19.)

2.  Polycel's factual assertions

Polycel argues that Pool Builders "improperly suggests that it placed orders with the Debtor until 2003" because "[t]he Debtor ceased operations in 1999 after which Pool Builders orders were placed with Polycel."[5]  (Polycel Reply

---

[5]  The Court cannot understand how it is that Polycel asserts that it did business with Pool Builders from 1999, in view of the fact that Polycel did not acquire the name or the assets of the Debtor (also named Polycel) until December, 2001.

Br. at 3.)  Polycel contends that "Pool Builders continues to [erroneously] refer interchangeably to Polycel and the Debtor, suggesting employees of the Debtor, like Charles Koczan, were employees of Polycel."  (Id.)

Polycel also contests Pool Builders' assertion that the molds were not listed as part of the assets sold and that the new owner knew that Pool Builders owned the molds, arguing that "neither of these assertions is supported by the record or correct."  (Id. at 3-4.)  Polycel further contests Pool Builders' assertion that it was "totally unaware" of the Debtor's bankruptcy.  (Id. at 4.)  Polycel cites "evidence in the record that, by mid-summer 2001, Pool Builders was aware of the Debtor's bankruptcy" and yet failed to act from 2001 to 2004.  (Id.)  Polycel argues that "the only action Pool Builders took during this three year period was doing business with the new owner, Polycel, which was clearly exercising dominion and control over the molds."  (Id.)

## II.  **Appeal to the District Court**

Polycel filed a notice of appeal from the Bankruptcy Court's Clarification Order in this Court on August 24, 2004.  Polycel raises the following issues on appeal:

> 1.    Whether the Bankruptcy Court erred by entering in June 2004, an order 'clarifying,' and effectively reversing provisions of its December 2001 order approving the sale of industrial foam molds from the Debtor to Polycel and finding and declaring Polycel to be a good-faith purchaser?

10

2.    Whether the Bankruptcy Court erred by failing to identify any factual or legal basis for its June 2004 order 'clarifying' its December 2001 order?

3.    Whether the Bankruptcy Court had any procedural or legal basis for its June 2004 order 'clarifying' its December 2001 order, including under 11 U.S.C. § 363 or [Rule] 60(b)?

4.    Whether the Bankruptcy Court erred in ruling in June 2004 that certain industrial, structural foam molds were 'excluded' from the 2001 Purchase Agreement between the Debtor and Polycel and the court's December 2001 order approving their sale to Polycel and finding and declaring Polycel to be a good-faith purchaser?

(Polycel Br. at 1.)

**DISCUSSION**

I.    **Applicable Law**

A.    Rule 59

Rule 59(a) provides in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits of equity in the courts of the United States.  On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Rule 59(b) states that a motion for a new trial "shall be filed no later than 10 days after the entry of the judgment."

Rule 59(a) does not apply here because the Bankruptcy Court did not conduct a trial in issuing the Sale Order.  Even if, assuming arguendo, the Bankruptcy Court had conducted a trial, Rule 59(a) would not apply because Pool Builders' motion was

11

filed more than two years after the Sale Order was issued.  See
Stradley v. Cortez, 518 F.2d 488, 492 (3d Cir. 1975) (holding
district court could not grant Rule 59 motion where four years
elapsed between entry of judgment and motion for new trial).

B.   Rule 60

Rule 60 allows a party to seek relief from a final judgment
or order.  Rule 60 provides in pertinent part:

> (a) Clerical Mistakes. Clerical mistakes in judgments,
> orders or other parts of the record and errors therein
> arising from oversight or omission may be corrected by
> the court at any time of its own initiative or on the
> motion of any party and after such notice, if any, as
> the court orders.
> . . .
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly
> Discovered Evidence; Fraud, etc.  On motion and upon
> such terms as are just, the court may relieve a party
> or his legal representative from a final judgment,
> order, or proceeding for the following reasons: (1)
> mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence . . .; (3) fraud . . .;
> (4) the judgment is void; (5) . . . it is no longer
> equitable that the judgment should have prospective
> application; or (6) any other reason justifying relief
> from the operation of the judgment.  The motion shall
> be made within a reasonable time, and for reasons (1),
> (2), and (3) not more than one year after the judgment,
> order, or proceeding was entered or taken.

To the extent that Pool Builders' motion was a Rule 60(a)
motion, Rule 60(a) does not apply because the "mistake" here, if
there was a mistake, was not clerical in nature.  See Stradley,
518 F.2d at 493.   The "mistake," rather, is substantive in
nature.  Pool Builders, therefore, cannot take advantage of Rule
60(a)'s liberal time provision authorizing the correction of

12

clerical errors "at any time."

Rule 60(b)(1) is implicated to the extent that Pool Builders alleges a substantive "mistake" on the part of the Bankruptcy Court in issuing the Sale Order.  See Stradley, 518 F.2d at 493 ("Rule 60(b)(1) is concerned with mistakes of a substantive nature.").  "Relief under Rule 60(b)(1), however, is limited to motions made 'not more than one year after the judgment, order, or proceeding, was entered or taken.'"  Id.  Pool Builders' motion was filed more than two years after entry of judgment, and therefore is time-barred.

Pool Builders is similarly time barred to the extent that it seeks relief from judgment on the grounds set forth in Rule 60(b)(2) and (3).  The reasons set forth in Rule 60(b)(4), (5), and (6), therefore, are the only remaining potential grounds for relief from judgment upon which Pool Builders' motion requesting "clarification" of the Sale Order may rest.

1.    Rule 60(b)(4)

Rule 60(b)(4) allows for relief from judgment if the judgment is void.  Rule 60(b) expresses a limitation that "motions shall be made within a reasonable time."  This limitation, however, does not apply to Rule 60(b)(4) and such motions may be made at any time.  See United States v. One Toshiba Color T.V., 213 F.3d 147, 157 (3d Cir. 2000) (void judgment may be challenged at any time "because of its status as a nullity"); Horace W. Longacre, Inc. v. Siegel, No. 84-5328,

13

1998 WL 26465, at *4 (E.D. Pa. Mar. 10, 1988), aff'd, 857 F.2d 1464 (3d Cir. 1988).  The concept of a void judgment must be narrowly construed in the interest of finality.  Marshall v. Bd. of Ed., 575 F.2d 417, 422 n.19 (3d Cir. 1978).  "A void judgment is one which, from its inception, was a complete nullity and without legal effect."  Id.  A judgment is not void merely if it is erroneous, however.  Id. at 422.

A judgment may be deemed void, and thereby subject to relief under Rule 60(b)(4), "if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered a decree which is not within the powers granted to it by the law."  Id. (citation and quotations omitted).  Not all jurisdictional defects render a judgment void, particularly a court's error in exercising jurisdiction, as opposed to a complete absence of subject matter jurisdiction, which may make a judgment void.  Page v. Schweiker, 786 F.2d 150, 160 (3d Cir. 1986).  A judgment is rendered void, rather, when a court's action in issuing the judgment was a "clear usurpation of power."  Id. at 160-62.

A judgment may also be void if a court "acted in a manner inconsistent with due process of law."  In re U.S. Metalsource Corp., 163 B.R. 260, 267 (Bankr. W.D. Pa. 1993).  "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Folger Adam Sec., Inc. v. Dematteis/Macgregor, JV,

14

209 F.3d 252, 265 (3d Cir. 2000) (citation and quotations
omitted).  A lack of notice to an interested party, thus, may
constitute a due process violation and justify deeming a judgment
void under Rule 60(b)(4).[6]  See In re U.S. Metalsource, 163 B.R.
at 267-68 (analyzing whether unsecured creditor committee's
failure to be notified of a hearing where emergency wage order
was entered was a lack of procedural due process rendering order
void under Rule 60(b)(4), but finding no violation because
committee was notified of order immediately after entry, leaving
committee time to appeal the order).

   Pool Builders' arguments, set forth in its brief submitted
to the Court, may be construed to support a Rule 60(b)(4)
motion.[7]  Pool Builders asserts that it was an interested in

_____

[6] Not only is lack of notice a possible violation of an
interested party's due process rights, but it may also be a
violation of the Bankruptcy Code.  "Section 363(b)(1) of the
Bankruptcy Code provides that the trustee may use, sell or lease
estate property only 'after notice and a hearing.'"  Folger, 209
F.3d at 264.  Section 102(1)(A) defines "after notice and a
hearing" as "such notice as is appropriate in the particular
circumstances, and such opportunity for a hearing as is
appropriate under the circumstances."  Id.  Rule 6004 of the
Bankruptcy Rules provides that notice of the proposed sale of
property be given in accordance with Rule 2002(a)(2),(c), and
(i).  Id. at 265.  "Rule 2002(a)(2) directs the clerk to give all
parties in interest at least twenty days notice by mail of a
proposed sale of property."  Id.

[7] Pool Builders asserted that the Sale Order was void as a
matter of law in its Clarification Motion submitted to the
Bankruptcy Court, arguing that the sale of the molds without
notice of the bankruptcy proceeding or Sale Motion violated its
due process rights.  (App. Polycel Br., Vol. IV, Item 32,
Clarification Motion, at 646-48.)  Pool Builders made this same
argument before the Bankruptcy Court during oral argument held on

party, having owned the molds at the time the Sale Order was
issued.  (Pool Builders Br. at 6, 10-11.)  Pool Builders also
claims that it "was totally unaware, for several years, of
Debtor's 2000 bankruptcy."  (Id. at 16.)  Pool Builders asserts
that it was unaware that Polycel was attempting to purchase its
molds because it failed to receive notice of the Sale Motion, the
Purchase Agreement, the Sale Hearing, or Sale Order.[8]  (Id. at
11, 18-19.)

2.   Rule 60(b)(5) and (6)

Rule 60(b)(5) allows for relief from judgment if, inter
alia, "it is no longer equitable that the judgment should have
prospective application."  Rule 60(b)(6) provides that a party
may be relieved from a final judgment for "any other reason
justifying relief from operation of the judgment."  Rule 60(b)
expressly requires that motions made pursuant to Rule 60(b)(5)
and (6) be made within a "reasonable time."

> While the language of either provision [Rule 60(b)(5)
> or (6)] is broad, neither presents the court with a
> standardless residual discretionary power to set aside

---

June 3, 2004.  (Id., Vol. VI, Item 38, 6-3-04 Oral Arg. Tr., at
1205:8-18.)  We, therefore, may consider Pool Builders' argument
relating to lack of notice on appeal because the issue was raised
before the Bankruptcy Court.

[8]  We recognize that Polycel asserts in its brief submitted
to the Court and, did so before the Bankruptcy Court as well,
that Pool Builders' lack of due process argument is irrelevant
because Polycel, as a good-faith purchaser of the molds, is
protected by Section 363(m) of the Bankruptcy Code.  (Polycel Br.
at 27-31; App. Polycel Br., Vol. VI, Item 35, Polycel Opp. Br.,
at 1161-1171.)  See infra note 12.

> judgment. . . . Instead it is settled that such relief
> is extraordinary and may be granted only upon a showing
> of exceptional circumstances.  Thus a party seeking
> such relief must bear a heavy burden of showing
> circumstances so changed that dangers, once
> substantial, have become attenuated to a shadow, and
> that, absent such relief an extreme and unexpected
> hardship will result.  We think a healthy respect for
> the finality of judgments demands no less.

Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)

(citations and quotations omitted).

To satisfy this burden a party seeking relief under Rule 60(b)(6) must show: "(1) that the reason for relief sought under [Rule] 60(b)(6) is not embraced within the various provisions of [Rule] 60(b)(1-5); and, (2) that exceptional circumstances exist which warrant the granting of extraordinary relief." Stradley, 518 F.2d at 494.  A Bankruptcy Court may exercise its power to vacate an order under Rule 60(b)(6) "very liberally" to accomplish justice or deal with unforeseen contingencies.  In re Durkalec, 21 B.R. 618, 620 (Bankr. E.D. Pa. 1982).

Pool Builders' arguments, set forth in its brief submitted to the Court, may be construed to support a Rule 60(b)(5) and (6) motion.[9]  Pool Builders asserts that if the Bankruptcy Court's Clarification Order is reversed it would be "deprived of its

---

[9]  Pool Builders argued before the Bankruptcy Court in its Clarification Motion that it was denied its "fundamental due process rights." (App. Polycel Br., Vol. IV, Item 32, Clarification Motion, at 646.)  We, therefore, may consider Pool Builder's arguments relating to lack of due process and equity on appeal in the context of a Rule 60(b)(5) and (6) motion because these arguments were raised before the Bankruptcy Court.

property through no fault of its own" in violation of its due process rights under the Fifth Amendment to the United States Constitution.  (Pool Builders Br. at 41-46, 49.)

## II.  **Jurisdiction and Standard of Review**

We have appellate jurisdiction over a Bankruptcy Court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  We review the Bankruptcy Court's "legal determination de novo, its factual findings for clear error[,] and its exercise of discretion for an abuse thereof."  In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000).  We must apply the appropriate standard of review to each part of the Bankruptcy Court's determinations relating to mixed questions of law and fact.  Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995).  A Bankruptcy Court's decision to grant or deny a Rule 60(b) motion may be reversed only for an abuse of discretion, except for determinations made under Rule 60(b)(4), which are subject to plenary review.  Page, 786 F.2d at 152.

## III. **Analysis**

We must resolve the interpretation or construction of the December 2001 Sale Order on appeal.  We do so applying the de novo standard of review to this question of law.  See In re Rashid, 210 F.3d at 205.  The Sale Order, as we interpret it, means what it says.  The Sale Order approved the Purchase Agreement whereby substantially all of Debtor's assets were sold

18

to Polycel.  (App. Polycel Br., Vol. II, Item 22, Sale Ord., at

229.)  The Purchase Agreement provided that among the assets

acquired by Polycel in the sale were

>           (k)  Molds.  All molds, current and historical,
> located in any of the Kentucky Premises, Ohio Premises
> and New Jersey Premises subject to the rights of third
> party persons who can prove an unencumbered ownership
> interest in same, including, without limitation,
> Backyard Products.  Such third party persons and the
> molds to which they might claim an ownership interest
> in are listed on Schedule 1.1(k).

(Id., Vol. III, Item 29, Kurt Joerger Aff., Ex. B, Purchase Ag.,

at 514.)  Schedule 1.1(k) indicated that there were no molds

encumbered by third parties.  (Id. at 547.)  It is undisputed

that the molds in question were in the Debtor's possession at the

location and facility described in the Sale Order at the time the

Order was entered.  We hold, therefore, that the Sale Order is

unambiguous on its face, pertains to the molds at issue, and as a

final order, it properly transferred ownership of the molds to

Polycel.

Pool Builders now disputes that the Sale Order was effective

to transfer ownership of the molds and seeks relief from

operation of the Sale Order as to the molds.  Pool Builders asked

the Bankruptcy Court "to clarify or modify or in the alternative

to vacate, to the limited extent that [Pool Builders'] ownership

rights are affected," the Sale Order.  (App. Polycel Br., Vol.

IV, Item 32, Clarification Motion, at 635-36.)  The Bankruptcy

Court expressly granted Pool Builders' motion and issued an order

19

"clarifying" its December 3, 2001 Order on June 22, 2004.  (App.
Polycel Br., Vol. VI, Item 40, Clarification Ord., at 1274-76.)
The Bankruptcy Court ordered as follows:

> 1.   The Motion is granted as stated herein, and the
>      objections to the Motion by the Buyer and the Trustee
>      are overruled.
> 2.   The Sale Order is hereby clarified to hold that with
>      regard to the Molds described below, the Sale Order
>      approved only the sale of the Debtor's right, title and
>      interest in the Molds and the Sale Order did not
>      authorize the sale of the Molds that were not property
>      of the Debtor's estate under 11 U.S.C. § 541. . . .
> 4.   Pool Builders, at its sole cost and expense, is
>      entitled to immediate possession of the Molds;
>      provided, however, that Pool Builders shall not take
>      possession of the Molds from the Buyer until Pool
>      Builders has filed with this Court, and the Buyer has
>      received notice of the filing of, a good and sufficient
>      bond ("the Bond"), in favor of the Buyer, in the amount
>      of One Hundred Fifty Thousand Dollars ($150,000).
> 5.   If the Buyer subsequently establishes that the Molds
>      are the Buyer's property and/or that Pool Builders is
>      otherwise liable to the Buyer for damages relating to
>      the Molds, then the Buyer shall be entitled to, among
>      other remedies, and not by way of limitation thereof,
>      payment of such amounts from the proceeds of the Bond.
>      Pool Builders may, by way of motion filed with this
>      Court and upon good cause, seek termination of the Bond.

(Id.)

The Sale Order, in the form of a final order, transferred
ownership rights of the molds to Polycel pursuant to the sale of
substantially all of the Debtor's assets as part of the
bankruptcy proceeding.  The Rules of Civil Procedure do not
permit a court to "clarify" a final order where that change
affects substantive rights of the parties.[10]  Such a request to

---

[10]  We note that the Clarification Order did not clarify the
legal effect of the Sale Order under Section 363.  It, rather,

20

clarify a final order constitutes a Rule 60(b) motion for relief
from the operation of judgment.  Therefore, the only mechanism by
which Pool Builders can now attack the validity of the Sale Order
is a Rule 60(b) motion to set aside the judgment.

It appears that the Bankruptcy Court could have based its
ruling and set aside the Sale Order based on any dispositive
basis relying on Rule 60(b)(4), (5), or (6), unless the operation
of Section 363(m) would preclude such relief.  The Bankruptcy
Court's Clarification Order effectively granted a Rule 60(b)
motion and relieved Pool Builders of the effect of the Sale Order
by changing the substantive rights of the parties and
transferring ownership of the molds from Polycel to Pool
Builders.[11]  To the degree that the Clarification Order imposed
injunctive relief, the Bankruptcy Court was required to provide
findings of fact and conclusions of law pursuant to Rule 52.[12]

_____

merely "clarified" whether the Sale Order authorized the sale of
assets that were not part of the bankruptcy estate.  (App.
Polycel Br., Item 40, Clarification Ord., at 1274-75.)

[11]  We recognize that the Clarification Order equivocates,
by transferring possession of the molds to Pool Builders but
allowing Polycel to recover from the proceeds of a bond posted by
Pool Builders if Polycel "subsequently establishes that the
[m]olds are [its] property and/or that Pool Builders is otherwise
liable to [it] for damages relating to the [m]olds."  (App.
Polycel Br., Item 40, Clarification Ord., at 1276.)

[12]  Rule 52(a) provides in pertinent part:

In all actions tried upon the facts without a jury or
with an advisory jury, the court shall find the facts
specially and state separately its conclusions of law
thereon, and judgment shall be entered pursuant to Rule
58; and in granting or refusing interlocutory

21

The Bankruptcy Court, however, failed to do so.  Likewise, to the degree that the Clarification Order may have granted the motion under Rule 60(b), the Bankruptcy Court failed to state the legal basis for its decision or conduct a substantive analysis of Rule 60(b)(4), (5), or (6) as these provisions apply to the facts of this case.  We, therefore, hold that the Bankruptcy Court abused its discretion in granting Pool Builders' motion.[13]  See, e.g., In re Cendant Corp. Prides Litig., 235 F.3d 176, 182 (3d Cir. 2000) (reversing district court for an abuse of discretion, on a Rule 60(b) motion, for failing to properly undertake a substantive analysis of the factors constituting excusable neglect and failing to apply the law to the facts of the case).

The Clarification Order effectuated a change in the status quo as to the location and possession of the molds, transferring possession of the molds from Polycel to Pool Builders, and requiring Pool Builders to post a bond with the clerk of the court in case Polycel subsequently was found to own the molds.

---

injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.

Fed.R.Civ.P. 52 (emphasis added).

[13]  The Bankruptcy Court on remand should reconsider, among other things, the applicability of Section 363(m) of the Bankruptcy Code to Pool Builders' Clarification Motion.

(App. Polycel Br., Item 40, Clarification Ord., at 1276.)  Based
on the balance of the order appealed from, it appears that the
Bankruptcy Court granted Pool Builders interim injunctive relief.
The record, however, is devoid of findings of fact and
conclusions of law, as required by Rule 52, to support the
granting of injunctive relief.  The Bankruptcy Court noted that
the requirement that Pool Builders "post a bond to obtain
possession of these molds in the event [Polycel] is able to
demonstrate that [Pool Builders] was not the true owner of the
molds" was "similar to [a] replevin action."  (App. Polycel Br.,
Vol. VI, Item 38, 6-3-04 Oral Arg. Tr., at 1252:8-13.)  We,
however, are unaware that this type of interim relief is
available in Bankruptcy Court or permitted by bankruptcy
procedure in the context of a pending Rule 60(b) motion.

## CONCLUSION

The Court, for the reasons stated _supra_, will reverse the
Bankruptcy Court's June 22, 2004 order and remand this matter for
findings of fact and conclusions of law consistent with this
memorandum opinion.

                                   s/ Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge

23